**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RUSSELL L. EBERSOLE                         :

                                            :

        v                                   :        Civil Action No. CCB-06-2219

UNITED STATES OF AMERICA,                   :
and BUREAU OF ALCOHOL, TOBACCO
FIREARMS AND EXPLOSIVES                      :

                                            :
                              o0o
                      <u>**MEMORANDUM**</u>

Pending in the above-captioned case is the government's motion to dismiss or for

summary judgment.  The plaintiff, Russell L. Ebersole, has filed a response in opposition to the

motion, and the matter is now ripe for this court's review.  Additional non-dispositive motions

are also pending.  A hearing in this matter is unnecessary.  *See* Local Rule 105.6 (D. Md. 2004).

For the reasons that follow, the government's motion, construed as a motion for summary

judgment, will be granted.

**Pending Motions**

On September 11, 2006, 60-day summons were issued for service of the complaint on the

government.  The summons were returned executed on October 2, 2006, the answer being due

November 15, 2006.  On November 8, 2006, Ebersole filed a motion for default judgment

asserting that the government had not filed an answer within the required 30 days.  (Pl.'s Default

Mem. at 2.) On November 7, 2006, this court granted the government's motion for an extension

of time in which to file an answer, to and including November 29, 2006.  (Order Nov. 7, 2006.)

Some confusion resulted from the court's order which erroneously specified 30 days for a

response, rather than the usual 60 days.[1]  The failure to file a response within 30 days is,

therefore, excusable.  The motion for default judgment will be denied as default judgment is not

warranted by the circumstances.

Also pending is Ebersole's motion for extension of time filed January 26, 2007, shortly

before the case was stayed at the request of the government.  (Pl.'s Time Mem.)  Ebersole was

seeking an enlargement of time in which to file a response to the government's motion to dismiss

or for summary judgment.  As additional time for responding was provided, the motion will be

denied as moot.

## Background

This case was filed pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

Ebersole's May 12, 2005, FOIA request was received by ATF's Disclosure Division on May 20,

2005. (Def.'s Mem. at Ex. 1.)   The request sought disclosure of: (1) two interagency task orders

related to the Department of State; (2) control records showing the type and quantity of

explosives used as part of a specific canine odor detection test conducted in April, 2002; and (3)

portions of a 2002 visitors' log that Ebersole alleges is maintained by the ATF Canine Training

Branch.[2]  (*Id*. at Ex. A.)

ATF granted Ebersole's request in part by letter dated September 6, 2005, when he was

---

[1] Under Fed. R. Civ. Proc. 12(a)(3)(A) the United States, an agency of the United States, or an officer or employee of the United States sued in an official capacity, shall serve an answer to the complaint or cross-claim - or a reply to a counterclaim - **within 60 days** after the United States Attorney is served with the pleading asserting the claim. *Id*. (emphasis supplied).

[2] Mr. Ebersole was convicted of 25 counts of wire fraud and two counts of presenting false claims to the government in the United States District Court for the Eastern District of Virginia.  The charges were brought against him when it was discovered that bomb-sniffing dogs he was providing to law enforcement agencies through a business he owned and operated failed detection tests performed by ATF officials. *See United States v. Ebersole*, 411 F.3d 517 (4th Cir. 2005).

2

provided with one of the task orders requested, without redactions.  ATF withheld the other task order in full citing exemptions under 5 U.S.C. § 552 (b)(2) and (b)(6).  (*Id*. at Ex. F.)

       With respect to the request regarding the type and quantity of explosives used as part of a specific canine odor detection test conducted in April 2002, no records were located.  (*Id*.) Searches for portions of a 2002 visitors log failed to locate any documents that complied with the request.  (*Id*.)  Ebersole was advised that providing further information for purposes of identifying the documents might assist the agency in locating the documents sought.  (*Id*.)  By letter dated November 1, 2005, Ebersole provided additional information to assist in locating the documents and requested the Disclosure Division to conduct another search.  (*Id*. at Ex. I.)  In the interim, the Office of Information and Privacy (OIP) received an appeal letter from Ebersole on November 9, 2005, regarding the documents withheld.  (*Id*. at Ex. J.)  On December 7, 2005, the Disclosure Division responded to Ebersole's letter regarding an additional search, advising him that another search would be conducted if he withdrew his appeal.  (*Id*. at Ex. L.)  On January 4, 2006, Ebersole filed a letter requesting a stay of his appeal until the Disclosure Division conducted the additional search.  (*Id*. at Ex. M.)  In a letter dated February 23, 2006, the Disclosure Division sent Ebersole a final response indicating that another search for material responsive to his request had been conducted, but again failed to locate relevant documents or files.  (*Id*. at Ex. 1.)

       In response to the appeal filed with the OIP, a letter was sent to Ebersole on June 27, 2006, advising that the search performed by ATF was adequate and the statement that no responsive records could be located was correct.  (*Id*. at Ex. 1.) The OIP did determine, however, that portions of the second task order, withheld in full by ATF, could be released with

redactions.  (*Id.*)  Ebersole was advised of his appellate rights, and the instant case was filed on August 23, 2006.

The government's initial motion for summary judgment did not address a second FOIA request Ebersole submitted to ATF dated May 29, 2005.   Ebersole opposed the motion on the basis that the May 29, 2005, request had not been addressed.  (Pl.'s Opp. Mem. at 4.)  The government asserted it never received Ebersole's May 29, 2005, FOIA request and sought a stay of this action pending the processing of that request.  (Def.'s Stay Mem.)  This court granted the stay on February 9, 2007.  A status report filed by the government on April 9, 2007, indicated that the search for responsive documents had been completed, but an additional period of time was required for review of the documents for purposes of determining what would be produced to Ebersole.  This court granted an additional stay to and including May 9, 2007.  After a subsequent status report filed by the government, this case was placed on the active docket and the government was granted to and including June 15, 2007, to supplement the motion for summary judgment.  The supplement was filed and explains the reply to Ebersole's May 29 [th] request.

Ebersole's May 29, 2005, request sought the following: (1) documents used by ATF to train and test or certify explosive ordinance detection ("EOD") or bomb dogs; (2) documents governing the preparation of explosive samples used in testing and/or certifying EOD canines at a specific canine training branch; (3) information governing the generation, storage, and records retention for training EOD canines at a specific canine training branch; (4) documents used by ATF related to maintenance of explosive compounds used in training or testing EOD canines at two specific canine training branches; and (5) documents indicating information about Richard

Strobal's alleged trip to a specific canine training branch during a portion of April 2002.  (*See* Def.'s Supp. Mem. at Ex. A.)  The  request, which was re-sent on January 18, 2007, and received by ATF on January 22, 2007, was styled as supplemental to a request Ebersole claimed he filed on May 29, 2005.  Ebersole's January request was acknowledged by letter delivered February 9, 2007, informing Ebersole that a response would be forthcoming.  (*Id*. at Ex. B.)

In a letter dated February 28, 2007, ATF informed Ebersole that his request would be granted in part when all responsive records were identified, but the anticipated response would not occur until March 28, 2007.  (*Id*. at Ex. C.)  By letter dated March 13, 2007, Ebersole advised the Disclosure Division of ATF that his FOIA case would be "appended to the FOIA civil litigation currently pending before the Federal District Court in Maryland."  (*Id*. at Ex. D.) When the Disclosure Division provided a substantive response on May 2, 2007, Ebersole was provided with 22 pages of documents in full and one page with redactions.  The agency withheld 77 pages of material based on exemptions to disclosure found in the FOIA statute.[3]  (*Id*.) Ebersole claims that ATF has not complied with FOIA, that he is entitled to the documents which were not disclosed, and that the search for documents responsive to his request was insufficient.  (Pl.'s Supp. Opp. Mem. at 2-6.)

### Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

[3] Specifically, the ATF invoked 5 U.S.C. § 552(b)(2) and (b)(7)(C).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

Under the Freedom of Information Act, federal agencies are required upon request to promptly make available records where the request reasonably describes the records requested and is made in accordance with published rules. *See* 5 U.S.C. §552(a)(3)(A). Records which are properly requested must be provided in any form or format requested by the person if it is readily reproducible in that form. *See* 5 U.S.C. §552(a)(3)(B). The purpose of FOIA is to open

6

government agency action to public scrutiny.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132,

149  (1975).  The Act establishes certain exemptions from disclosure which must be narrowly

construed to accommodate the goal of public disclosure of agency records.  *See Department of*

*Air Force v. Rose*, 425 U.S. 352, 361 (1976).   Summary judgment may be granted, however, "on

the basis of [] agency affidavits . . . if the affidavits describe the documents and the justifications

for nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*,

656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir.

1973) (stating that in claiming exemptions to a FOIA request, the government must provide a

detailed justification for the exemptions that clearly specify, separate, and index the requested

information).  The government asserts, with respect to Ebersole's first FOIA request, that certain

materials are exempt from disclosure under 5 U.S.C. §552 (b)(2), (5), and (6).  (Def.'s Mem. at

7.)  With respect to Ebersole's second FOIA request,  two exemptions are asserted under 5

U.S.C. § 552(b)(2) and (b)(7)(C). (Def.'s Supp. Mem. at 3-5.)

Exemption (b)(2) covers matters "related solely to the internal personnel rules and

practices of an agency."  Two types of materials are covered by the (b)(2) exemption, to wit:

internal agency matters so routine or trivial that they could not be the subject of genuine public

interest; and internal agency matters that are of public interest but disclosure risks circumvention

of statutes or agency regulations.  Matters of public interest are exempt from disclosure when

they relate solely to the internal personnel rules and practices of an agency.  Non-disclosure of

procedural manuals and guidelines used by the agency in discharging its regulatory function is

appropriate when it prevents circumvention of agency regulations.  *See Rose*, 425 U.S. at 364.

In short, if disclosure of the internal documents sought would impart knowledge of

administrative agency policies or procedures that would help outsiders circumvent regulations or

standards of an agency and thwart the purpose of the agency, the (b)(2) exemption applies.  *Id.*

 With respect to Ebersole's first FOIA request, the government asserts a (b)(2) exemption

regarding internal administrative funding codes.  (Def.'s Mem. at Ex. 1.)  The codes appeared

on ATF task order 150 relating to a "Department of State training agreement for Italian law

enforcement conducted at ATF's canine facility as part of an anti-terrorism initiative."  (*Id.*)  The

government asserts that the codes fall into the category of routine or trivial information that are

not the subject of genuine public interest. (*Id.* at 17, Ex. 1 at 6–7.)  The rationale behind

permitting an agency to exempt information of this type from disclosure is to insure agencies are

not burdened with the responsibility of responding to requests for trivial information unlikely to

be of any public interest.  *See Martin v. Lauer*, 686 F.2d 24, 34 (D.C. Cir. 1982).  In *Coleman v.

F.B.I.*, the D.C. district court found trivial administrative data such as file numbers, mail routing

stamps, initials, data processing notations, and other administrative markings to be exempt.  13

F. Supp. 2d 75, 78-79 (D.D.C. 1998).  Here, because internal administrative funding codes

satisfy the exemption category of routine or trivial administrative information, the information

was properly withheld by the government.

 With regard to Ebersole's second FOIA request, the government withheld information

concerning guidelines for ATF personnel in relation to canine training procedures and

techniques, also based on the (b)(2) exemption.  (Def.'s Supp. Mem. at 4.)  ATF personnel assert

by sworn affidavit that the information withheld contains photographs as well as explicit

techniques depicting how canines are presented with specific smells during training, including the amount of canine distraction used during explosives recognition training.  (*Id.*) Dissemination of information of this type would enable criminals to use the training procedures and techniques to learn how to avoid detection of explosives.  Specifically, the ATF argues that release of the information may permit criminals to evade detection by hiding explosives in a manner for which the ATF canines are not trained.  (*Id.*)  If the information is made available to the general public, the effectiveness of the canine explosive detection teams would be compromised.  (*Id.*)  In *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, the D.C. Circuit found that an ATF training manual was exempt from FOIA disclosure because the manual discussed investigative techniques for internal ATF personnel and that any public disclosure of the information would risk circumvention of agency rules.  670 F.2d 1051, 1073 (D.C. Cir. 1981).  Here, because ATF is tasked with preventing terrorism, reducing violent crime, regulating the firearms and explosives industries, and investigating and reducing crime involving firearms and explosives, dissemination of internal agency information that renders canine explosive detection teams ineffective, or even less effective, thwarts the purpose of the ATF. *See Rose*, 425 U.S. at 364.  Accordingly, this material was also properly withheld under the (b)(2) exemption.

Ebersole asserts that the introduction of training techniques used by ATF at his criminal trial and the publication of similar material negates the government's claim that the information should not be made public.  (Pl.'s Supp. Opp. Mem. at  4.)  Disclosure under FOIA differs greatly from introduction of internal agency information at trial.  It is within the trial court's discretion to seal sensitive material introduced at trial so that it is not disclosed to the public

generally.  In contrast, when information is released as a part of a FOIA request, the information

"belongs to the public" and there is no further control over who is permitted to review or possess

it.  *See National Archives and Records Admin. v.  Favish*, 541 U.S. 157, 172 (2004).

Furthermore, Ebersole's claim that similar material has been published "on behalf of the

government" by Auburn University is not persuasive.  (Pl.'s Supp. Opp. Mem. at 5.)

Specifically Ebersole claims that the Auburn University publication included the threshold limits

of distractor odors used to test detection dogs.  (*Id*.)  However, the government's rationale for

withholding the information sought by Ebersole was that it contained "photographs as well as

explicit techniques depicting how canines are presented with specific smells during training."

(Def.'s Supp. Mem. at 4.)  Thus, the information published by Auburn University does not

appear to be the same.[4]

Exemption (b)(5) covers "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party . . .  in litigation with the agency."  5 U.S.C. § 552

(b)(5).  Matters covered by the exemption include information covered by attorney-client

privilege, attorney work-product privilege, and the executive deliberative process privilege

protecting candid internal discussions of legal or policy matters.  The government asserts that the

request for a sample memorandum of understanding prepared by ATF in conjunction with canine

_____

[4]A paper entitled "Canine Substance Detection: Operational Capabilities" was published by the College of Veterinary Medicine of Auburn University in 1999 reporting on tests that were done by the University. *See* www.auburn.edu/research/cdri/cdri_publications.html.  The paper indicates that it is a report on a program of applied research focusing on training and deployment of the dog-handler team that has been underway for several years at Auburn University.  There is no indication that the report was prepared on behalf of the government but the program is "supported by an interagency canine substance detection group, which represents a number of federal agencies."  A brief review of other publications listed on the website does not reveal the "smoking gun" plaintiff claims exists with respect to the standards required by the ATF.

training provided to various law enforcement entities is covered by the (b)(5) exemption.  (Def.'s

Mem. at Ex. 1 at 7). The government notes that the document sought is in sample or draft form

which is subject to change according to agreement of the parties and contains terror response

plans and protocols that are not necessarily kept in each agreement.  (*Id.*)  The government

asserts that this document comports with the deliberative process privilege under the (b)(5)

exemption, the purpose of which is to prevent damage to the quality of agency decisions.  (*Id.* at

13.)  *See Sears*, 421 U.S. at 150.  The focus of the exemption is on "documents 'reflecting

advisory opinions, recommendations and deliberations comprising part of a process by which

governmental decisions and policies are formulated.'" *Id.* (*quoting Carl Zeiss Stiftung v. V.E.B.

Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.C. 1966)).

Here, the document claimed by the government to be exempt is not a government

contract, but rather a document drafted in anticipation of negotiating the terms of a contract.

Because the document does not memorialize a final agency decision, it falls within the (b)(5)

exemption.  "The public is only marginally concerned with reasons supporting a policy which an

agency has rejected, or with reasons which might have supplied, but did not supply, the basis for

a policy which was actually adopted on a different ground." *Sears*, 421 U.S. at 152.  Similarly,

the marginal public interest in government contractual terms which may never be adopted is

outweighed by the agency's interest in protecting the integrity of the negotiation and decision-

making process.  The document was therefore properly withheld.

Exemption (b)(6) applies to "personnel and medical files and similar files the disclosure

of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552

(b)(6).  The exemption is "intended to cover detailed Government records on an individual

which can be identified as applying to that individual." *United States Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).  The exemption encompasses information contained in government  files containing detailed private or personal information about a particular individual.  (*Id.*)  Ebersole's request for information including the names of federal law enforcement employees and information by which they could be identified was withheld by the government under the (b)(6) exemption.  (Def.'s Mem at Ex. 1 at 8.)  It is unclear, however, whether the government unintentionally asserted a (b)(6) exemption instead of a (b)(7)(C) exemption in its first motion for summary judgment.  (*See id.*)  The government's supplemental motion for summary judgment asserts a (b)(7)(C) exemption in order to prevent the dissemination of information that could reveal the name or identity of law enforcement agents.  (Def.'s Supp. Mem., Supp. Declaration at 5.)  Because the information withheld by the government appears to fall properly under the (b)(7)(C) exemption, it is not necessary for the court to reach the merits of the (b)(6) claim.[5]

Exemption (b)(7)(C) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  This exemption has been construed, for example, to protect the identities of FBI

---

[5] The (b)(6) exemption, which applies to personnel, medical, and other "similar files," has been construed by the Supreme Court to encompass those records which contain detailed personal information about an individual, the release of which "would constitute a clearly unwarranted invasion of that person's privacy."  *United States Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).  Here, it is difficult to determine how the requested Task Order #150 and the letter to Chief Bill Sauls satisfy the "similar files" provision of exemption (b)(6).  Instead, as the government appears to argue in its supplemental motion for summary judgment, any redactions from these documents are more properly justified under the (b)(7)(C) exemption.

agents, investigative and support personnel, other federal government employees, parties of

investigative interest to the FBI, interviewed third parties, non-federal law enforcement officials,

third parties mentioned in an investigative context, and commercial and state or local employees

who cooperated with investigations.  *Coleman*, 13 F. Supp. 2d at 79.   Thus, law enforcement

employees may have a legitimate privacy interest in information sought by a FOIA request.  The

ability to keep their identities private is a unique requirement for law enforcement personnel.

> One who serves his state or nation as a career public servant is not
> thereby stripped of every vestige of personal privacy, even with
> respect to the discharge of his official duties. Public identification
> of any of these individuals could conceivably subject them to
> harassment and annoyance in the conduct of their official duties
> and in their private lives.

*Nix v. United States*, 572 F. 2d 998, 1006 (1978).

Once it is established that a privacy interest in the information exists, the public interest

in disclosure of the information must be balanced against the privacy interest at stake.  *Id.* at

1006.  The claimed privacy interest in non-disclosure is that dissemination of information

containing identities of law enforcement personnel that appear in law enforcement records may

prejudice their effectiveness in conducting investigations or may subject them to needless

harassment.  (Def.'s Supp. Mem. at 6.)   "[W]hether disclosure of a private document under

Exemption 7(C) is warranted must turn on the nature of the requested document and its

relationship to the basic purpose of the Freedom of Information Act rather than on the particular

purpose for which the document is being requested."  *United States Department of Justice v.*

*Reporters Committee for Freedom of the Press*, 489 U.S. 749, 772 (1989).  Exposing improper

conduct by agency officials is an interest that comports with the purpose of FOIA.   "[W]here

there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is

to show that responsible officials acted negligently or otherwise improperly in the performance

of their duties, the requester must establish more than a bare suspicion in order to obtain

disclosure." *Favish*, 541 U.S. at174.   Courts considering a claim that disclosure is in the public

interest are not required to "engage in a state of suspended disbelief with regard to . . .

allegations" raised; rather, there must be credible evidence presented by the requestor that

"warrant a belief by a reasonable person that the alleged Government impropriety might have

occurred." (*Id*.)   When balanced against Ebersole's claimed public interest of establishing his

innocence of a crime for which he has already been tried and convicted,[6] the privacy interest of

law enforcement personnel outweighs the asserted public interest.  *Neely v. F.B.I.*, 208 F.3d 461,

464 (4th Cir. 2000) ("[C]ourts have sensibly refused to recognize, for purposes of FOIA, a public

interest in nothing more than the fairness of a criminal defendant's own trial.").   Thus, FOIA

requests are not meant to displace discovery rules.   *See John Doe Agency v. John Doe Corp.*,

493 U.S. 146, 153 (1989).

       Here, in reaching the conclusion that the information requested in the first FOIA request

was exempt from disclosure, ATF determined that the release of law enforcement officers'

names and identifying information would not contribute to the public's understanding of the

agency's function. (Def.'s Mem. at 12.)   Ebersole has offered nothing from which a public

interest serving the purpose of FOIA might be served by disclosure of the information at issue.

*See also Nix*, 572 F.2d at 1006 (finding the right of privacy of FBI agents involved in an

investigation to outweigh any alleged public interest in identifying the agents who conducted the

---

[6] Only a part of the government's case against him included testimony regarding tests Ebersole's
dogs failed. In addition, the government offered testimony of Ebersole's employees regarding
falsification of documents related to qualifications of handlers and training hours provided. The
conviction was affirmed on appeal.  *See United States v. Ebersole*, 411 F.3d 517 (4th Cir. 2005).

investigation).  Thus, because there is no public interest in the information sought, the

information was properly withheld as exempt from disclosure.

Based on the 7(C) exemption, ATF also withheld under the second FOIA request the

name and phone number of a federal law enforcement agent as well as information by which that

individual could be identified.  (Def.'s Supp. Mem. at 5.)  Ebersole asserts that ATF should not

be permitted to claim on the one hand that material meeting the standards of Crim. Rule 16 and

*Brady*[7] were turned over in his criminal trial, but then claim that related material is exempt

under FOIA.  (Pl.'s Supp. Opp. Mem. at 5.)  The gravamen of Ebersole's claim is that the precise

test used by ATF officials on the dogs provided by his business has not been turned over to him.

(*Id*.)  To the extent plaintiff had a colorable claim that the information sought is exculpatory, this

is not the forum or the means by which to raise that claim.  A challenge to the validity of his

criminal conviction must be pursued through an appropriately filed post-conviction action in the

court where the conviction took place, not as an adjunct to a FOIA claim.  Indeed, Ebersole has

raised the claim in the context of a direct appeal.   *See United States v. Ebersole*, Crim. Case No.

1:03cr112-LMB (E.D. Va. 2007).  Before concluding the *Brady* claim raised in a motion for a

new trial was without merit, the court noted that:

> [T]he government submitted the withheld documents under seal to
> the court for *ex parte* review to enable the court to determine if any
> materials should be disclosed under *Brady v. Maryland*, 373 U.S.
> 83 (1963).  On May 24, 2006, Ebersole filed a motion to unseal
> documents disclosed under court order to produce *Brady* materials.
> On May 30, 2006, after finding that nothing disclosed by the
> government constituted *Brady* materials and that revealing the
> requested information would circumvent existing FOIA
> procedures, the court granted the government's request to keep the

---

[7] *Brady v. Maryland*, 373 U.S. 83 (1963).

documents under seal.

(*Id*. at Paper No. 222 at 8.)

The issue was raised again in Ebersole's motion to vacate, and was again rejected.  *See*

*Ebersole v. United States*, Civil Action No. 1:06cv869 (E.D. Va. 2007).  Ebersole's assertions

that the information sought is already public because it was introduced at his criminal trial and

that the information has been withheld in violation of *Brady* are specious and, in any event,

irrelevant to this court's analysis of the FOIA claim.  Therefore, the information was properly

withheld pursuant to the 7(C) exemption.

Material not located after search

Ebersole also challenges the sufficiency of the search for documents complying with his

request.  (Pl.'s Supp. Opp. Mem. at 6.)  He states the initial declaration provided contains an

admission by Bob Noll that there are logs of explosives used for training and testing EOD

canines at the ATF Canine Technical Branch in Front Royal, but those logs were not provided.

(*Id*.)  Ebersole also claims that nothing was provided about the procedures that govern the

generation, storage, and retention of records for training and testing of EOD canines at the ATF

Canine Technical Branch.  (*Id*.)  Lastly, Ebersole asserts that MSDS sheets provided by ATF do

not match the list of explosives used by ATF in the April 22, 2002, testing of his dogs.[8]  *Id*.

To determine if an agency's search for responsive materials is adequate, the agency must

---

[8] Plaintiff also claims the *Vaughn* index provided by defendant lacks sufficient detail for purposes of determining the content or subject matter of the documents withheld. (Pl.'s Supp. Opp. Mem. at 4.) The purpose of the *Vaughn* index is to serve as a surrogate to *in camera* review of documents withheld. *See Ethyl Corp. v. E.P.A.*, 25 F.3d 1241, 1249 (4th Cir. 1994). The court finds that the index provided with the motion for summary judgment and the supplemental motion, when viewed in the context of the declarations provided, are sufficient to supplant the necessity of an *in camera* review of the withheld documents within the meaning of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

demonstrate that it has "conducted a search reasonably calculated to uncover all relevant documents." *Ethyl Corp. v. E.P.A.*, 25 F.3d 1241, 1247 (4th Cir. 1994).   It is not necessary for the agency to locate "every single potentially responsive document."  (*Id.*)  The agency:

> may not rest on an affidavit that simply avers that the search was conducted in a manner consistent with customary practice and established procedure. Rather, the affidavit must be reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search.

(*Id.*)   In response to Ebersole's first FOIA request, the government explains that "all directorates and offices within ATF that would potentially maintain information pertaining to [Ebersole's] request were contacted and required to certify that a search for responsive information was executed."  (Def.'s Mem. at Ex. 2 at 9.)   The affidavit submitted then describes in detail the search performed for each requested item.  (*Id.* at 9–11.)

Ebersole asserts that with respect to Item 2, Explosives Control Logs, the government admits that the logs exist, but the logs were not provided in response to his May 29, 2005, supplemental FOIA request.  (Pl.'s Supp. Opp. Mem. at 6.)   The government states, however, that the logs originally requested by Ebersole related to tests performed on April 21 through 23, 2002, on his dogs.  (Def.'s Mem. at Ex. 1 at 9–10.)   The Disclosure Division contacted the Front Royal facility where the tests were performed and learned that the facility maintains control logs for explosives used from the magazine but the tests performed on Ebersole's dogs were not performed by the Front Royal branch and explosives located at the branch were not utilized in those tests.  (*Id.* at 10.)   Upon further investigation with the Chief of the Canine Training Branch it was discovered that the tests on Eberole's dogs were performed and the explosives used were

17

provided by the Arson and Explosives Section of ATF's Forensic Science Laboratory located in
Beltsville, Maryland.  (*Id.*)  In an effort to locate the documents requested, the Chief of the
Arson and Explosives Section (AES) was contacted. He informed the Disclosure Division he
was the person who performed the testing at the canine facility and that no explosives control
logs are maintained by his office.  (*Id.*)  The Disclosure Division was further informed that the
explosives used were provided by the AES and not the Front Royal facility.  (*Id.*)  The search for
responsive records was then terminated as there was no other place where the records would be
maintained.  (*Id.*)

Ebersole's May 29, 2005, request did not, as he maintains, specifically request all control
logs maintained at the Front Royal facility.  (Pl.'s Supp. Opp. Mem. at 6.)  With respect to the
Front Royal facility, the request sought: documents governing preparation of explosive samples
used in testing or certifying dogs; information governing generation, storage and records
retention for training and testing dogs; documents pertaining to the procurement, storage, use or
disposal of explosive compounds used in training or testing dogs; and copies of travel vouchers
and expense reports related to a trip made by Richard Strobal to the facility.  (Pl.'s Opp. Mem. at
14.)  None of the requests contained in the May 29, 2005, letter are similar to Ebersole's original
request for "logs or control records showing which explosives and the quantities of explosives
drawn from the explosives magazines" at the Front Royal facility on April 21 through 23, 2002.
Moreover, Ebersole clarified to ATF that the documents he had an interest in pertained to the
testing of his dogs.  The request was properly addressed through an adequate search that revealed
no responsive documents.

Ebersole also takes issue with the government's  failure to provide "procedures  . . .  that

govern the generation, storage and retention of records for training and testing of EOD canines at

the ATF Canine Technical Branch." (Pl.'s Supp. Opp. Mem. at 6.) Documents detailing canine

training procedures and techniques were withheld in full under exemption (b)(2). (Def.'s Supp.

Mem. at Ex. 1.) The procedures governing storage and retention of records for training and

testing are part of the documents properly withheld under exemption (b)(2).

Ebersole takes issue with the content of the MSDS sheets he was provided in response to

his request because it does not match the list of explosives used by ATF in the April 22, 2002,

testing of his dogs. (Pl.'s Supp. Opp. Mem. at 6.) To the extent that Ebersole is dissatisfied

with the content of information provided or believes it establishes untoward conduct by ATF

officials involved in the testing of his dogs, this is not the forum in which the allegation may be

addressed. The only issue over which this court has jurisdiction is whether the requirements of

FOIA were observed.

## Conclusion

Ebersole has tenaciously pursued disclosure of documents he believes will exonerate him

of the crimes for which he was convicted. Despite every indication that there is nothing for

Ebersole to gain from the disclosure of the documents he seeks, he steadfastly insists they are the

key to his prison cell. The amount of judicial time that has been spent analyzing Ebersole's

claims is not insignificant. Every allegation and claim raised has been addressed and there is

nothing to support Ebersole's protestations. Portions of the material were properly withheld, the

searches were adequate, and Ebersole is not entitled to the relief sought. Judgment will be

entered in favor of the government by separate order which follows.

__September 24, 2007_____          _____/s/_____
Date                                    Catherine C. Blake
                                        United States District Judge